Pamela BOYD, Petitioner–Appellant,

v.

Joan YUKINS, Warden, Respondent–Appellee.

No. 03–1404.

United States Court of Appeals, Sixth Circuit.

May 27, 2004.

---

Andrew N. Wise, Federal Public Defenders Office, Detroit, MI, for Petitioner–Appellant.

Brad H. Beaver, Asst. Atty., Office of the Attorney General, Lansing, MI, for Respondent–Appellee.

Before BATCHELDER and MOORE, Circuit Judges, and CALDWELL,* District Judge.

## OPINION

MOORE, Circuit Judge.

Petitioner–Appellant Pamela Boyd ("Boyd") appeals the district court's denial of her petition for a writ of habeas corpus. In 1994, Boyd pleaded guilty to one count of armed robbery for which she was sentenced to fifteen to forty years' imprisonment. Boyd seeks to overturn her conviction by claiming that: 1) her plea was not knowing or intelligent because her trial counsel misinformed her about her potential sentence; and 2) her trial counsel's error deprived her of the effective assistance of counsel. The district court denied the petition, and we **AFFIRM** the district court's judgment.

## I. FACTS AND PROCEDURE

In 1994, Boyd was charged with one count of armed robbery and one count of assault with intent to commit great bodily harm less than murder after she struck a woman with a telephone receiver. Boyd agreed to plead guilty to the armed robbery charge in exchange for the prosecution's dismissal of the assault count. At a plea hearing on September 2, 1994, the government clearly stated that armed robbery was a felony punishable by incarceration for "any term of years ... not less than two years." Joint Appendix ("J.A.") at 33–34 (Hr'g Tr. 09/02/94). Boyd, represented by Kevin Wistrom ("Wistrom"), was addressed by the Court. She signaled her assent to the plea agreement as outlined by the prosecution, stated that no other promises had been made to her to induce the guilty plea, and agreed that no one had coerced her into accepting the plea agreement. As the colloquy continued, Boyd explicitly responded that she wished to plead guilty even though the court could sentence her to any term of imprisonment, up to and including life imprisonment. The trial court accepted the plea.

Boyd was sentenced on October 12, 1994. Boyd was represented by a different attorney, Joseph Fisher ("Fisher"), whom Boyd had not previously met. The court sentenced Boyd to a "period of not less than 15 nor more than 40 years." J.A. at 51 (Sent. Hr'g Tr. 10/12/94). Later that

---

* The Honorable Karen K. Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

afternoon, Boyd wrote a letter to Wistrom and Fisher, seeking an explanation of "why I did not get sentenced within my guideline." J.A. at 199 (Boyd Letter, 10/12/94). In November, Boyd signed an affidavit, in which she claimed, "Wistrom ... told me that if I pleaded guilty I would receive a sentence under the sentencing guidelines which would be from a 3 year minimum to an 8 year maximum, or if I had a previous conviction which was a felony, that I would receive a sentence of no more than 8 years minimum to 15 years maximum." J.A. at 196 (Boyd Aff. 11/26/94). Boyd swore that she "would not have entered a plea of guilty in this case if I had known that the minimum sentence I would receive was over 8 years in prison." J.A. at 197. In December 1994, Boyd attempted to withdraw her guilty plea, claiming that she did not intelligently waive her rights, but the trial court denied her motion. J.A. at 103–04 (Mich. Cir. Ct. Hr'g 12/12/94).

Boyd directly appealed her conviction in November 1995, asserting several claims relating to the validity of her plea. In September 1996, the Michigan Court of Appeals ruled that "[t]he record of the plea hearing supports the trial court's finding that [Boyd]'s waiver was voluntary, knowing and intelligent." J.A. at 107 (*People v. Boyd*, No. 180460, 1996 WL 33357138 (Mich.Ct.App. Sept. 27, 1996)). On October 21, 1996, Boyd sought leave to appeal to the Michigan Supreme Court, which the state high court denied on July 25, 1997.

Without having filed any state postconviction motions, Boyd filed a federal habeas petition on July 21, 1998, in the United States District Court for the Eastern District of Michigan, challenging the validity of her guilty plea. The district court held an evidentiary hearing on January 27, 2000, during which Boyd testified that attorney Wistrom told her that if her previ-

ous conviction was a misdemeanor, she would face five to eight years, but if it was a felony, she would face eight to fifteen years. She had believed, based on this conversation, that she would not be sentenced to more than fifteen years. She claimed, during her testimony, that she never was told that these ranges represented only the range of minimum sentences available. At the end of the hearing, the district court suggested that Boyd voluntarily withdraw the habeas petition without prejudice in order to exhaust an ineffective assistance of counsel claim in state court.

Boyd withdrew her petition and filed a postconviction motion for relief from judgment in the Circuit Court for Muskegon County on March 17, 2000, claiming that she was denied the effective assistance of her trial counsel. The trial court denied her motion on April 5, 2000. Boyd appealed on December 6, 2000, and the Michigan Court of Appeals denied the application "for lack of merit in the grounds presented" on June 7, 2001. J.A. at 265 (Mich.Ct. App.Or.). On November 30, 2001, the Michigan Supreme Court denied the application for leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." J.A. at 288 (Mich.Sup.Ct.Or.).

Boyd returned to federal court on January 16, 2002. In a new habeas petition. Boyd reasserted her claim that her plea was not knowing or voluntary and added an ineffective assistance of trial counsel claim. The district court held another hearing on March 6, 2003, during which Wistrom testified telephonically about his representation of Boyd. Wistrom conceded that he did not remember the details of Boyd's case, but claimed that it was his general practice to explain to a client the Michigan sentencing guidelines under

which the guideline ranges outline only statutory minimums. He testified that he would not have gone into court until he had explained that the guideline range of eight to fifteen years was a range of minimum sentences and that the maximum sentence was statutorily determined by the nature of the crime.

The district court denied Boyd's petition on March 24, 2003. The court held first that Boyd had not provided any objective evidence that contradicted her admission before the Michigan trial court that she was intelligently waiving her right to a jury trial. The district court also denied Boyd's ineffective assistance claim, finding that she had not established that Wistrom misled her about the effect of the sentencing guidelines.

## II. ANALYSIS

We review in turn Boyd's separate claims that her guilty plea was invalid and that she did not receive the effective assistance of counsel promised by the Sixth Amendment.

### A. Standard of Review

We review de novo a district court's decision to grant or deny a writ of habeas corpus. *Northrop v. Trippett*, 265 F.3d 372, 376 (6th Cir.2001), but we will not disturb the district court's factual findings unless they are clearly erroneous. *Gonzales v. Elo*, 233 F.3d 348, 352 (6th Cir. 2000). Our de novo review is circumscribed by AEDPA's text, as a habeas petition cannot be granted "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim ... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States...." 28 U.S.C. § 2254(d)(1).

### B. The Validity of Boyd's Plea

■ The district court did not err in upholding the Michigan Court of Appeals's ruling that "[t]he record of the plea hearing supports the trial court's finding that [Boyd]'s waiver was voluntary, knowing and intelligent." J.A. at 107 (*People v. Boyd*, No. 18046, 1996 WL 333571380 (Mich.Ct.App. Sept. 27, 1996)). "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Because of the momentous consequences, the waiver of the constitutional right to trial before a jury or a judge "not only must be voluntary but must be [a] knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Nonetheless, "[a] defendant is not entitled to withdraw his [or her] plea merely because he [or she] discovers long after the plea has been accepted that his [or her] calculus misapprehended ... the likely penalties attached to alternative courses of action." *Id.* at 756. "The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

For a plea to be intelligent and knowing, the trial court must ensure that the defendant is "aware of the direct consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.1994). Significantly, "the defendant must be aware of the maximum sentence that could be imposed." *Id.* at 154; *cf. Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir.1991) (holding that a plea was not knowing or intelligent when a trial court incorrectly informed defendant

that the maximum sentence was fifteen years when *in fact it was* seventy-five years). Additionally, the defendant must be informed about any mandatory minimum sentences, which may impact the defendant's decision to plead guilty. *See United States v. Stubbs*, 279 F.3d 402, 412 (6th Cir.2002) (ruling that a guilty plea was invalid when defendant was not aware that he was not subject to a mandatory-minimum sentence); *United States v. Goins*, 51 F.3d 400, 405 (4th Cir.1995) (holding that failure to inform a defendant of a mandatory-minimum sentence rendered a guilty plea invalid).

A defendant's statements on the record during a plea colloquy that he or she understands the nature and the consequences of the plea provide strong evidence that a plea was intelligent and knowing. "When a defendant ... brings a federal habeas petition challenging his [or her] plea, the state generally satisfies its burden [to show that a plea was intelligent] by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993). We are generally wary of a defendant's post hoc claims that she or he subjectively believed the plea agreement to be different. "If we were to rely on [the defendant]'s alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he [or she] believed the plea bargain was different from that outlined in the record could withdraw his [or her] plea, despite his [or her] own statement during the plea colloquy ... indicating the opposite." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir.1999).

Boyd claims that her plea was not knowing or voluntary because attorney Wistrom allegedly told her that the eight-to-fifteen-year sentencing range represented the entirety of her sentence rather than the range of minimum sentences. Even as-

suming that Wistrom gave her incorrect information, the trial court remedied any misconception by informing her of the potential maximum and minimum terms of imprisonment. Boyd told the court that she understood that "the maximum possible penalty for this crime is life in prison," J.A. at 36, and it was clear that the prosecution would be pursuing a mandatory-minimum sentence of two years.

The evidence contradicting Boyd's plea-colloquy responses consists of her letter to Wistrom sent the day of the plea hearing and her affidavit of a month later. It is indeed unfortunate if Boyd truly believed she would only have received a maximum of fifteen years in prison by pleading guilty, but without more, Boyd's subjective and unverifiable impressions of the sentence she should have received cannot overcome her on-the-record statements to the court. *See Ramos*, 170 F.3d at 566. Our unpublished case of *Mix v. Robinson*, 64 Fed.Appx. 952, 957–58 (6th Cir.2003), is instructive. The defendant claimed that his attorney told him that he would receive eight to twenty years' imprisonment. At the plea colloquy, the defendant relayed his understanding that the crime to which he was pleading guilty was punishable up to life or any other term of years. *Id.* at 957–58. The trial court then sentenced the defendant to life imprisonment. We held that the defendant's plea was valid because the trial court explained to the defendant that he could be sentenced to a term of any number of years. *Id.* at 957–58. Similarly, despite Boyd's subjective belief that she would not receive a sentence of more than fifteen years, the plea colloquy clearly informed Boyd of the potential sentence she faced. Thus, Boyd's guilty plea was knowing and intelligent.

## C. Ineffective Assistance of Counsel Claim

 Boyd also claims that she was deprived of the effective assistance of trial

counsel. The district court denied Boyd relief on this ground because she failed to prove: 1) that Wistrom's representation was deficient, and 2) that, assuming his representation was deficient, Boyd was prejudiced. On appeal, the State of Michigan argues that Boyd's ineffective-assistance claim is barred by reason of procedural default. Michigan Br. at 5–8. Although the Muskegon County Court and the Michigan Court of Appeals denied Boyd's ineffective-assistance claim on the merits, the Michigan Supreme Court denied Boyd leave to appeal based upon Michigan Court Rule ("MCR") 6.508(D), which bars "relief to the defendant if the motion ... (3) alleges grounds for relief ... which could have been raised on appeal from the conviction and sentence." MCR 6.508(D)(3). A procedural default, such as a failure to comply with MCR 6.508(D)(3), is an independent and adequate state judgment, but it does not serve to limit our jurisdiction. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Trest v. Cain,* 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997) ("[T]his Court has made clear that in the habeas context, a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter.").

Boyd responds that her appellate counsel's failure to raise the issue of ineffective assistance of trial counsel serves as cause and prejudice to overcome any procedural default that may have occurred. *See* MCR 6.508(D)(3)(a)-(b); *Coleman,* 501 U.S. at 753–54 ("Attorney error that constitutes ineffective assistance of counsel is cause."). An appellate "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation." *Coleman,* 501 U.S. at 755. Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), appellate counsel is ineffective if his or her representation is deficient such that it falls below the standard of "reasonably effective assistance." *id.* at 687, and if that deficiency is prejudicial, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "It is not necessary for appellate counsel to raise every nonfrivolous claim on direct appeal.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir.2002) (quotation omitted). Consequently, our analysis of appellate counsel's ineffectiveness and our assessment of whether any such ineffectiveness prejudiced Boyd so as to excuse a procedural default both depend on the strength of the underlying ineffective assistance of trial counsel claim, to which we now turn.

Boyd has failed to prove that her trial counsel was ineffective. First, Boyd cannot demonstrate that Wistrom actually gave her misinformation about the sentencing ranges such that his representation could be considered deficient. Wistrom testified that it was his normal practice to inform his clients of their applicable sentencing ranges, including minimums. Wistrom had four years' experience trying criminal cases, and he handled a large number of criminal cases per year. Wistrom's testimony was not conclusive, because he could not remember the precise details of his representation of Boyd, but the district court did not clearly err in lending credibility to his testimony. Nor did it improperly conclude that Wistrom's representation was constitutionally adequate.

Second, even assuming that Wistrom gave Boyd incorrect information. Boyd cannot demonstrate that but for this information she would not have pleaded guilty.

To demonstrate prejudice in the plea agreement context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Any misleading information imparted to Boyd was remedied by the plea colloquy, which made it clear that she could face a sentence up to and including life imprisonment. *See McAdoo v. Elo*, 346 F.3d 159, 171–72 (6th Cir.2003) (ruling that defendant, who claimed that his attorney implied he would only be sentenced to twenty years as opposed to life, was not prejudiced when the trial court informed the defendant that he was eligible for a life sentence); *Ramos*, 170 F.3d at 565 (holding that a state trial court's proper colloquy cures any misunderstandings a defendant may have about the consequences of his or her plea). Boyd was told by the court of the potential of a life sentence, yet she still pleaded guilty.

Thus, Boyd's ineffective assistance of trial counsel claim must fail because she cannot meet either prong of the *Strickland* test. Accordingly, the state court did not unreasonably apply *Strickland* in denying Boyd relief. Furthermore, the failure of Boyd's appellate counsel to raise the ineffective assistance of trial counsel claim was not deficient in itself so as to excuse any procedural default that may have existed.

### III. CONCLUSION

In sum, we **AFFIRM** the district court's judgment. Boyd knowingly and intelligently agreed to the plea because the state trial court made her aware of the potential maximum and minimum sentence that she faced consequent to her guilty plea. Additionally, the state postconviction courts did not unreasonably apply *Strickland* because Boyd can show neither a deficiency in Wis-

trom's representation nor consequent prejudice.