NOT RECOMMENDED FOR PUBLICATION

File Name: 20a0597n.06

Case No. 19-4003

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Oct 20, 2020
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANTWAN LAMAR HUTCHINSON,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

BEFORE: COOK, BUSH, and NALBANDIAN, Circuit Judges.

COOK, Circuit Judge. Antwan Lamar Hutchinson challenges the validity of his guilty plea, arguing that the district court erred by failing to hold a competency hearing sua sponte. We AFFIRM.

**I.**

A grand jury indicted Hutchinson on twelve charges, including counts of drug trafficking and murdering witnesses. At his arraignment, the district court asked Hutchinson standard questions, including whether he had "been treated by a medical doctor or a mental health professional for any reason[.]" (R. 56 at 158.) To this Hutchinson answered yes, and his counsel elaborated that "[d]uring his current incarceration he's under medical attention." (*Id.*) The court also asked Hutchinson if he takes medication and Hutchinson responded that he does. The judge

continued, asking Hutchinson whether he read the indictment and consulted with his counsel about it. This too prompted an affirmative response from Hutchinson. Hutchinson then waived his right to a speedy trial, confirming that he consulted with counsel about this decision too.

After arraignment, the court received a letter from Hutchinson saying that "going [through counsel] is not work[ing] right now" and that he "would like to [exercise his] Sixth Amendment and constitution[a]l right to a fast and speedy trial." (R. 53 at 149.) The letter prompted a status conference and a resulting postponement of the scheduled trial; the government and Hutchinson's codefendants consented, but not Hutchinson.

Later, the court got word that Hutchinson wanted to plead guilty, so it held a plea hearing to first confirm that Hutchinson indeed wanted to change his plea to guilty. Hutchinson answered yes, affirming that he felt neither forced nor coerced. The court went on to the standard inquiries, having Hutchinson confirm his name, age, education, and reading and writing ability.

And, as the judge had when he arraigned Hutchinson, he asked him if he was "being treated by a medical doctor or mental health professional for any reason[.]" (R. 308 at 959.) After Hutchinson responded yes, the court asked him if he takes "any prescription medications as a result of that[.]" (*Id.*) Hutchinson told the court that he takes medication for "[b]ipolar [disorder], high blood pressure and depression." (*Id.*) In response, the court inquired whether any of his medications "interfere with your ability to comprehend the nature of these proceedings[.]" (*Id.*) Hutchinson answered no. The court directed the same question to Hutchinson's counsel, who answered: "Your Honor, we've had an opportunity to meet with Mr. Hutchinson over the course of this representation and earlier this morning. We have no question as to his competence to plead here today." (*Id.*)

In keeping with the requirements of Federal Rule of Criminal Procedure 11, the judge proceeded to confirm Hutchinson's understanding of the trial rights he was waiving and each of the terms of the plea agreement, including his agreement to a sentence of life without parole. At the conclusion of this plea colloquy, Hutchinson pleaded guilty to one count of conspiracy to distribute controlled substances and two counts of murdering a witness.

Following the plea hearing, Hutchinson filed a sentencing memorandum and mitigation report that detailed his mental health problems and intellectual disability. Imposition of the stipulated sentence of life imprisonment followed. Hutchinson timely appeals.

## II.

A district court must order a hearing to determine a defendant's competency "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). The court need not hold a competency hearing if the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

On appeal, we examine "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006) (quoting *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir. 1983)). In determining whether the court should have held a hearing, we consider in-court observations of the defendant's demeanor and conduct, evidence of irrational behavior, history of past mental illness, medical

evidence in the record, and statements by defense counsel regarding the defendant's competency. *See United States v. Dubrule*, 822 F.3d 866, 879 (6th Cir. 2016). We review a district court's decision not to conduct a competency hearing for abuse of discretion. *United States v. Heard*, 762 F.3d 538, 541 (6th Cir. 2014).

### III.

Hutchinson argues that three features of his interaction with the court should have alerted the judge to question his competence to be subjected to criminal proceedings: the court's observations of Hutchinson's in-court conduct, the letter he sent to the court expressing frustrations with counsel and pushing for a speedy trial, and evidence of his mental health issues. We respectfully disagree.

### A. Hutchinson's Conduct

The government maintains that the record includes no red flags regarding Hutchinson's conduct at any court proceeding that ought to have prompted the court to inquire further into his competency. Rather, his court appearances reflect that the court had no reason to "doubt [Hutchinson's] competency to stand trial." *Filiaggi*, 445 F.3d at 858. As the government notes, Hutchinson responded appropriately at each of the opportunities the court had to observe him. During his change-of-plea hearing, for example, Hutchinson told the court that his counsel's advice satisfied him, and that he freely pleads guilty. Similarly, Hutchinson ably told the court that he wished to change his plea to guilty, understood the plea agreement, the rights he was waiving, and the agreed sentence of life imprisonment. As argued by the government, the court observed Hutchinson conducting himself similarly at arraignment, during which he appropriately responded that he read the indictment, discussed it with counsel, and consulted with counsel about waiving his right to a speedy trial. Throughout these appearances, the record supports the government's

stance that Hutchinson responded coherently to all questions from the court, with no evidence of disjointed or non-responsive answers. *See United States v. Coleman*, 871 F.3d 470, 477 (6th Cir. 2017); *United States v. Kirk*, 240 F. App'x 66, 68 (6th Cir. 2007).

### B. Hutchinson's Letter

As for his second reason why the court ought to have known of his shortcomings, Hutchinson points to his letter demanding to go to trial as "ma[king] it clear that [he] was not taking the advice of his counsel" and "fail[ing] to take that advice was irrational and not in his own best interest." (Appellant Br. at 19.) The government, however, aptly responds that neither poor trial strategy nor disagreement with counsel demonstrates incompetence. *See United States v. Miller*, 531 F.3d 340, 349–51 (6th Cir. 2008); *United States v. Ford*, 184 F.3d 566, 581 (6th Cir. 1999). In fact, that letter could support the contrary view that Hutchinson was able to articulate legal principles to the court, such as his "Sixth Amendment and cons[t]itution[a]l right to a fast and speedy trial" and thus understood the nature of the proceedings against him. (R. 53 at 149); *see Coleman*, 871 F.3d at 477 (noting that a defendant's ability to make legal arguments evidences his understanding of the nature of the proceedings against him).

### C. Hutchinson's Mental Health

Finally, Hutchinson figures that the court had a duty to hold a hearing to examine whether his mental illnesses affected his competency to plead after he told the court that he was taking medication for bi-polar disorder, high blood pressure, and depression. As Hutchinson sees it, taken together with his testimony about his medication, his sentencing memorandum and mitigation report "made it abundantly clear" that he had a "serious mental health condition" that might have affected his competency. (Appellant Br. at 19.)

And while true that a history of mental illness may alert the court to question competency, "it does not follow that because a person is mentally ill he is not competent to stand trial." *Miller*, 531 F.3d at 349 (quoting *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996)). In fact, though a court receives a medical report detailing a defendant's mental illnesses, it may reasonably rely on counsel's statements regarding that defendant's competency to participate in court proceedings. *See United States v. Teague*, 956 F.2d 1427, 1432 (7th Cir. 1992); *see also United States v. Morgano*, 39 F.3d 1358, 1374 (7th Cir. 1994) ("Who but the defendant's attorney knows best if the accused is able to assist in his own defense?"). To trigger the court's duty to hold a competency hearing sua sponte, the defendant must tie his ailments to a "'deep[] breakdown' in cognition," *United States v. Tucci-Jarraf*, 939 F.3d 790, 795 (6th Cir. 2019) (quoting *Coleman*, 871 F.3d at 477), such that he lacked the "ability to consult with counsel, assist in his own defense, or understand the proceedings against him," *United States v. Alfadhili*, 762 F. App'x 264, 268 (6th Cir. 2019). This court has affirmed challenged pleas when the defendant fails to make such a connection. *See, e.g.*, *id.* ("bi-polar disorder, PTSD, and depression"); *Miller*, 531 F.3d at 349 (paranoia); *Mackey v. Dutton*, 217 F.3d 399, 410–14 (6th Cir. 2000) (schizophrenia).

Here, as the government persuasively argues, without tethering his claims of mental shortcomings to an inability to understand or participate in the court proceedings, Hutchinson cannot show that the court abused its discretion in failing to hold a hearing. And upon learning of Hutchinson's medication for bi-polar disorder, high blood pressure, and depression, the judge here confirmed with Hutchinson that none "interfere[s] with [his] ability to comprehend the nature of these proceedings." (R. 308 at 959.) What is more, Hutchinson's counsel offered his assessment: "Your Honor, we've had an opportunity to meet with Mr. Hutchinson over the course of this representation and earlier this morning. We have no question as to his competence to plead here

today." (*Id.*); *see Dubrule*, 822 F.3d at 879. In the absence of a request for a hearing, the court proceeded to deliver the standard change-of-plea colloquy.

In reviewing competency appeals, "[t]he bare record that this court reviews on appeal is a poor substitute for the district court's personal observation of the defendant's demeanor and the district court's considered judgment of the defendant's ability to conduct trial proceedings." *United States v. Stafford,* 782 F.3d 786, 791 (6th Cir. 2015). We find no support in the record for second guessing the district court's assessment of Hutchinson's competency to plead guilty.

**IV.**

We AFFIRM.